IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 213 MR WCM

| | |
|---|---|
| KATHERINE DROLETT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANTHONY BRIAN ROBINSON, )<br>ONESPA WORLD RESORT SPAS (NORTH )<br>CAROLINA), INC. *doing business as* )<br>Mandara Spa, STEINER MANAGEMENT )<br>SERVICES, LLC )<br>)<br>Defendants. )<br>_____ ) | ORDER |

This matter is before the Court on Plaintiff's Motion to Compel (the "Motion for Compel," Doc. 78), which seeks an Order directing Steiner Management Services, LLC to produce certain documents that it has withheld on the basis of the work product doctrine.

I. Background

On August 5, 2020, Plaintiff filed her original Complaint against Anthony Brian Robinson ("Robinson") and OneSpaWorld Resort Spas (North Carolina, Inc. d/b/a Mandara Spa ("Mandara Spa"). Doc. 1.

On August 11, 2021, Plaintiff was granted leave to file her Amended Complaint and to join Steiner Management Services, LLC ("Steiner") as an additional defendant. Doc. 53. Plaintiff alleges that Steiner provided various

1

management services, including risk management and legal services, to Mandara Spa, and disseminated policies and procedures relative to the conduct of massage therapists. See Doc. 55 at ¶¶ 7 & 10.

Plaintiff's claims stem from an alleged sexual assault that occurred on August 31, 2018 at Mandara Spa in Cherokee, North Carolina when Robinson gave Plaintiff a massage. Plaintiff alleges that prior to that assault, Mandara Spa was aware that Robinson had been accused of sexually assaulting a different client, Meredith Carr ("Carr"), in April of 2018, and had also received complaints of sexual assaults involving other clients and a different therapist but had failed to respond to those complaints appropriately. Additionally, Plaintiff contends that whenever a complaint of sexual assault or misconduct by a massage therapist arises at Mandara Spa, Steiner's policies and procedures require Mandara Spa to report the allegations to "Steiner Corporate Risk Management," which "receives the incident reports, inputs information related to the incident reports into a claims database, and retains the incident report in a physical file in the risk management department…." Doc. 55 at ¶ 13. Plaintiff alleges that despite Steiner's awareness of past incidents of sexual assault, Steiner took no measures to protect the female patrons of Mandara Spa. See Doc. 55 at ¶¶ 244-45.

On September 15, 2021, all parties – Plaintiff, Robinson, Mandara Spa, and Steiner – moved for an extension of the pretrial deadlines. That request

was granted on September 27, 2021, and the deadline to complete court-enforceable discovery was extended to December 15, 2021. Doc. 63.[1]

Beginning two weeks prior to the expiration of the discovery deadline, various discovery related motions were filed by the parties. See Docs. 72, 73, & 78. A hearing on certain of those motions was conducted on December 21, 2021.

The instant Motion to Compel was filed on December 15, 2021 and, as noted above, seeks the production of documents that Steiner has withheld on the basis of the work product doctrine. Doc. 78. Steiner has filed a response in opposition to the Motion and Plaintiff has filed a reply. Docs. 91 & 92. Additionally, during the December 21 hearing, Steiner was directed to submit the subject documents for *in camera* review. On December 29, 2021, Steiner submitted six documents totaling 24 pages to the Clerk's office. The undersigned has also reviewed these items in connection with the Motion to Compel.

II. Discussion

On August 30, 2021, Plaintiff served written discovery requests on Steiner which requested information pertaining to complaints of sexual assault or inappropriate conduct by a massage therapist at any land-based spa managed by Steiner. Doc. 79-1 at 11.

---

[1] Additionally, the deadline to complete mediation was extended to January 5, 2022, and the motions deadline was extended to January 19, 2022.

Plaintiff states that, in response, Steiner identified certain allegations of sexual assault. Doc. 79 at 3; Doc. 79-5 at 8-9. Steiner also directed Plaintiff to incident reports that had previously been produced by Mandara Spa. See Doc. 79-2 at 20-21 (directing Plaintiff to incident reports produced on March 11, 2021, April 2, 2021, and April 13, 2021).

Steiner withheld additional documents pursuant to the work product doctrine. See Doc. 79-6 (Steiner's privilege log).

Plaintiff argues that these documents were not prepared in anticipation of litigation and that they "are incident reports containing witness statements of customers following alleged sexual assault complaints at spas managed by Steiner Corporate that were filled out in the ordinary course of business pursuant to Steiner Corporate policies and procedures…." Doc. 79 at 2.[2]

In response, Steiner contends that sexual assault allegations against massage therapists are "unique claims" for which the "possibility of litigation" is high. Doc. 91 at 1. Steiner assets that it has distinct policies for investigating claims of "inappropriate behavior" by massage therapists, and that following

---

[2] Alternatively, Plaintiff contends that, if the Court determines the documents are work product, she has a substantial need for the documents and cannot obtain the information by other means. Id. Plaintiff also argues that Steiner waived its right to assert work product protection over the documents because it "failed to raise timely objections in response to Interrogatory 21, delayed in its production of the privilege log, and the delay prejudiced the Plaintiff." Id. Because the undersigned agrees that Steiner has not established that the documents are protected by the work product doctrine, the undersigned does not reach Plaintiff's alternative arguments.

4

an alleged incident of inappropriate behavior, the spa conducts an investigation (including collecting witness statements) and sends an incident report to Risk Management so it can respond to the claim. See Doc. 91 at 3. Steiner further points out that Elizabeth Junco, Steiner's vice-president of claims and risk management, testified that Risk Management maintains the incident reports until the statute of limitations expires or a claim is closed, and that she believes the "claim file" is privileged. See id. (citing Doc. 91-4 at 17:1-5; Doc. 91-3 at 20:5-22:5).

Rule 26 of the Federal Rules of Civil Procedure provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," absent a showing that the materials are otherwise discoverable and that party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(3)(A).

For the work product doctrine to apply, "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." National Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir.1992). "[M]aterials prepared

5

in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes" do not constitute "documents prepared in anticipation of litigation" and are not entitled to work product protection. Solis v. Food Emp'rs Labor Relations Ass'n, 644 F.3d 221, 232 (4th Cir. 2011) (quoting National Union, 967 F.2d at 984); see also RLI Insurance Company v. Conseco, Inc., 477 F.Supp.2d 741 (E.D.Va. 2007) (explaining that work produce protection is narrowly construed and only extends to work that was created "because of" litigation (not work that would be done in any event)).

The party seeking work product protection bears the burden of establishing that the prospect of litigation was the "driving force" behind the preparation of the document. National Union, 967 F.2d at 984.

In this case, Steiner's privilege log lists the six subject documents. See Doc. 79-6. Four of those documents are incident reports (the "Incident Reports") and two documents are pieces of email correspondence (the "Correspondence").[3]

---

[3] During the *in camera* review, the documents submitted were compared to those listed on Steiner's privilege log. Doc. 79-6. The privilege log describes one of the Incident Reports as being dated August 2, 2019, but this entry appears to reference a January 5, 2018 Incident Report.

6

Case 1:20-cv-00213-MR-WCM   Document 96   Filed 01/18/22   Page 6 of 10

### A. The Incident Reports[4]

Three of the Incident Reports were sent from "Mandara Spa's Internal Investigation" either to the "Risk Management File" or the "Investigative File." The fourth Incident Report was sent from "Iliana Cabrera" to "Bruce Baker."[5]

It is not apparent that the Incident Reports are entitled to protection under the work product doctrine.

Steiner argues that because the Incident Reports were generated pursuant to a policy that was prepared by its management team, which included legal counsel, the reports should be considered as having been prepared at the direction of counsel and in anticipation of litigation. See Doc. 91 at 4-5 ("Steiner created a policy – at the direction of its entire management, including legal counsel – to create incident reports immediately after sex assault allegations in anticipation of litigation.").

The undersigned expresses no opinion as to whether a policy created at the direction of counsel could ever extend blanket work product protection to documents created pursuant to that policy, even if those documents pertained to incidents that were entirely unrelated and occurred at different times, in

---

[4] As noted, other incident reports have been produced by Mandara Spa. Steiner argues that while Plaintiff had a substantial need for those documents, she does not have such a need for the Incident Reports that have been withheld.

[5] Steiner does not identify Ms. Cabrera or Mr. Baker on its privilege log or in its briefing.

7

different locations, and involved different people.

However, assuming that such a policy could pass muster, the undersigned is not persuaded that Steiner's policy here should be placed in that category. Steiner has not submitted affidavits or cited to deposition testimony that provides specific details regarding the creation of the policy, including the extent to which legal counsel was involved in drafting the policy and the specific purpose and intent behind the enactment of the policy.

Further, although Steiner seems to contend that the policy only requires the completion of an incident report when there are allegations of sexual assault, and that Steiner anticipates litigation in every such instance, some information indicates that the policy is applied more broadly, including when there have been claims of inappropriate behavior by a therapist that do not include sexual assault. It is not apparent from the record that Steiner anticipates litigation in the context of these more general allegations of "inappropriate behavior." It also appears that the company uses the term "claim" to refer generally to disputes or problems and that "claims" may be resolved outside of the judicial process. <u>See</u> Doc. 91-4 at 53:14-23 ("I don't have a claim file and then a litigation file and then a, you know, personnel file. Things – it would all be in the same file"); Doc. 91-3 at 5:21-22 ("A claim is anything that comes to me that requires follow-up with the guest").

Incident reports are also used for personnel decision making.

8

Likewise, it is not apparent that the Incident Reports themselves, regardless of the general policy under which they may have been created, were prepared in anticipation of litigation. The record does not indicate that Steiner personnel were directed by any of its counsel to prepare the Incident Reports or that the Reports were prepared by or sent to counsel immediately after they were created.

## B. The Correspondence

According to the privilege log, the Correspondence consists of email traffic between Bill Toth, (who Plaintiff believes to be a spa director), Ms. Junco, Jesus Padilla (vice-president of resort operations), and/or Luis Almodovar (who, according to Mr. Padilla's deposition, is in human resources, see Doc. 91-1 at 97:7-8).[6]

Steiner's response in opposition to the Motion to Compel does not discuss these two documents directly and it appears that Steiner views these emails as being part of the Incident Reports.

However, as with the Incident Reports themselves, the undersigned is

---

[6] The undersigned's *in camera* review indicates that other individuals were also involved in the Correspondence. Specifically, the September 27, 2016 Correspondence lists Christina Sullivan as the recipient, with Ms. Junco, Mr. Padilla, Genny Holden, and Mary Tardiff as being copied. There is no information regarding the positions held by Genny Holden or Mary Tardiff. The August 29, 2018 Correspondence from Mr. Almodovar to Ms. Junco is a forwarded email from Kay Lasic to Mr. Almodovar and Christine Comella with Shawna Hartfield copied. Again, there is no information regarding the positions held by Kay Lasic, Christine Comella, or Shawna Hartfield.

9

not persuaded that the Correspondence is entitled to work product protection. There is no indication that any individual involved in the Correspondence is an attorney, or that these communications were otherwise created at the behest of counsel. See O'Bar v. Lowe's Home Centers, Inc., No. 5:04-CV-00019-W, 2006 WL 2990475, at *3 (W.D.N.C. Oct. 19, 2006) ("Defendant has not shown how these documents indicate the mental processes or thoughts of Defendant's in-house counsel. Rather, it appears these documents are interoffice communications….").

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel (Doc. 78) is **GRANTED** and Steiner Management Services, LLC is **DIRECTED** to produce the documents listed on its privilege log (Doc. 79-6) on or before **January 21, 2022**.

Signed: January 18, 2022

W. Carleton Metcalf
United States Magistrate Judge